than *accrued.* We see no merit in this position.

In National Forge & Ordnance v. United States, on defendant's motion for reconsideration, this court stated its position with extreme clarity on the sufficiency of refund claims wherein it was said:

> " * * * The rule of *strictissimi juris* is not applicable to claims for refund. All that is required of them, as a predicate for suit in this court is that they put the Commissioner of Internal Revenue on notice of the ground of the taxpayer's claim that his taxes were erroneously computed. This does not have to be stated with any greater particularity than is necessary to draw the Commissioner's attention to the claim he makes in his subsequent suit."

We think that by claiming a deduction in 1945 due to a carry-back of a net operating loss in 1946, plaintiff filed a claim for refund upon which suit for the proper determination of a net operating loss carry-back could be predicated. Because its claim for refund computed the section 122(d) (6) deduction on the basis of excess profits tax paid rather than accrued does not present a different fact situation which would require the Commissioner to examine other matters not germane to the dispute such as occurred in United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398. Here the Commissioner's attention was specifically directed to the method of correctly computing a net operating loss carry-back to the year in question. See also this court's decision in Harry Ferguson, Inc., v. United States, 146 F.Supp. 836, 137 Ct.Cl. 137.

Finally defendant urges that if we find in favor of the plaintiff, then we should apply a "tax benefit rule" which would require inclusion in plaintiff's 1945 and 1946 income all tax credits which were deducted under section 122 (d) (6) from 1944 net income and later refunded. This same argument was raised and rejected by the court in Na-

tional Forge & Ordnance, supra. It would serve no useful purpose to repeat the arguments presented there since we adhere to that opinion. It follows that no "tax benefit" rule is applicable and no part of the credited or refunded taxes which were also the subject of a section 122(d) (6) deduction are includible as income in any taxable year. See also Budd Co. v. United States, D.C., 148 F. Supp. 792.

The parties have stipulated that the amount of recovery due plaintiff by reason of the allowance of the 1946 net operating loss as a carry-back and deduction in 1945 is $511,559.50. This together with $5,052.94 and $3,242.95 previously stipulated as due the plaintiff totals $519,855.39. Judgment will therefore be entered for the plaintiff in the amount of $519,855.39, together with interest on $516,612.44 as provided by law.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

**UNION PACIFIC RAILROAD COMPANY**

v.

**UNITED STATES.**

No. 171–55.

United States Court of Claims
March 5, 1958.

Raymond A. Negus, Washington, D. C., for plaintiff. Lawrence Cake, Washington, D. C., was on the brief.

Paris T. Houston, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

PER CURIAM.

This case was referred by the court pursuant to Rules 45 and 46, 28 U.S.C.A. to C. Murray Bernhardt, a commissioner of the court, with directions to make findings of fact and recommendations as to the legal conclusions to which the court should arrive, considering such findings of fact, applicable statutes, and legal principles.

Accordingly, Commissioner Bernhardt has submitted his findings of fact and opinion of law which, with slight change, we approve and adopt as our own.

Based thereon, judgment will be entered for plaintiff in the sum of $4,010.

It is so ordered.

### Opinion of Commissioner

The plaintiff railroad is claiming unpaid demurrage on flatcars allegedly ordered and/or appropriated by defendant for its use at the Marine Corps Supply Annex, Nebo, California. The defendant contends that the cars were voluntarily supplied by plaintiff without a valid order from defendant, and were not used or appropriated for use by defendant, although their use had been intended prior to a change in plans causing the equipment to be shipped by truck. The controversy depends upon the construction of freight tariff number 4 relating to car demurrage rules and charges, and its application to the following facts:

The circumstances giving rise to the claim occurred in October and November 1952. On October 22 the Marine Corps Supply Depot in San Francisco instructed the Marine Corps Supply Annex at Nebo, California, to ship 102 surplus unserviceable 105 mm. howitzers as soon as possible from their storage site at Nebo to the Tooele Ordnance Depot in Utah. Standard prescribed procedure in such situations called for the issuance of a route order by the Commandant of the Marine Corps specifying the mode of

transportation, followed by the issuance to the carrier selected of a written order to provide required transportation services at a definite time and place. As a matter of practice, however, when the defendant's agent at Nebo would receive information of a large shipment pending he would alert the carrier in advance of either obtaining a route order from higher authority or issuing a formal written car order to the carrier, whereupon the carrier would commence to assemble the necessary transportation equipment for the move. No written car order was issued to plaintiff in the instant case. Normally this informal alert procedure performed a useful function and served the mutual convenience of both carrier and shipper, in that the former could accumulate the necessary equipment and the latter would have the equipment available when needed. In the instant case it was a particularly justifiable expedient, since not only were freight cars in short supply at that time, but also material comparable in dimensions and character to the surplus howitzers had always moved in that area by rail and never by truck.

On October 29 or 30 the defendant's traffic manager at Nebo notified the plaintiff's agent at nearby Barstow that about 60 flatcars would be needed promptly at Nebo to commence loading the howitzers on November 3 for shipment to Warner, Utah, which apparently was the nearest rail point serving the Tooele Ordnance Depot. The plaintiff's agent at Barstow immediately notified his superiors that 65 flatcars were needed at Nebo by November 3, and on the same day, October 30, defendant's traffic manager at Nebo requested the Commandant of the Marine Corps to issue the necessary route order, fully expecting the route order would specify a rail shipment. The howitzers were ultimately transported by truck.

In response to defendant's alert the plaintiff made available to defendant 35 flatcars between November 3 and 10, placing them on trackage belonging to defendant inside the Marine Corps Supply Annex at Nebo where they would be accessible for loading.

Meanwhile, on November 7, the Commandant of the Marine Corps issued a route order directing the shipment of the howitzers by truck. On November 12 for the first time the plaintiff was orally notified of this change in plans and removed its flatcars from defendant's premises, thus terminating the accrual of demurrage charges. Uncertainty still prevailed on the part of defendant's traffic manager at Nebo as to whether the indicated movement by truck instead of rail was to stand, for on November 13 the Commandant canceled his previous instruction to ship by truck, directed shipment by rail instead to be shared by three carriers including plaintiff, and later the same day canceled the change and reverted to his original route order direction to move the howitzers by truck. Until November 12 at the earliest, and perhaps as late as November 14, defendant's traffic manager at Nebo confidently expected the shipment to be made by rail, not only because it had been the undeviating practice to ship such equipment by rail but also because the size and weight of the howitzers would require special state permits for them to be moved by truck over state highways.

Relevant portions of Freight Tariff No. 4 governing car demurrage rules and charges in effect at times here material, provided:

"Rule No. 3—Computing Time—Item No. 510

*   *   *   *   *   *

"Section D.   *   *   *

"Note 1.—'Actual Placement' is made when a car is placed in an accessible position for loading or unloading or at a point previously designated by the consignor or consignee. If such placing is prevented from any cause attributable to consignor or consignee and car is placed on the private or other-than-public-delivery tracks serving the consignor or consignee, it shall be con-

sidered constructively placed without notice.

\* \* \* \* \* \*

"Rule No. 6—Cars for Loading—Item No. 525

"Section A.—Cars for loading will be considered placed when such cars are actually placed or held on orders of the consignor. \* \* \*

"Section B.—When empty cars placed on orders are not used in transportation service, demurrage will be charged from actual or constructive placement until released, with no free time allowance. When a car so ordered and placed on a public track is not used, and no advice from the party who ordered the car has been received within 48 hours (2 days) (exclusive of Saturdays, Sundays and holidays (see Item No. 7)) from the first 7:00 A.M. after placement, the car may be removed and treated as released at the time of removal. \* \* \*

\* \* \* \* \* \*

"Section D.—1. If any empty car is appropriated without being ordered, it shall be considered as having been ordered and actually placed at the time so appropriated. If not loaded outbound, such car is subject to Section B of this Rule."

The questions posed are—one, whether the cars in question were ordered by defendant and, two, whether, if not so ordered, they were appropriated by defendant so as to incur demurrage liability pursuant to Section D. 1. of Rule 6, Freight Tariff No. 4, quoted above. An affirmative answer to either of these tests would be fully dispositive of the claim in plaintiff's favor. Comment on the first question, therefore, will be restricted to the observation that, even if the absence of a formal written order for the cars were to prevent the existence of an enforceable formal contract between the parties, the circumstances surrounding the representations pursuant to which plaintiff supplied the cars, including the defendant's vacillation in the issuance of a route order, could bring into existence an implied contract under which recovery would lie, assuming the subject matter to be within the scope of the authority of defendant's traffic manager. Plaintiff's position rests more solidly, however, on the second of the two grounds of recovery, for the facts provide strong evidence of appropriation of the cars by defendant for which, even without an order, the applicable tariff provision offers reimbursement for demurrage.

■■ The Marine Corps Supply Annex at Nebo was a military installation surrounded by a wire fence and having two gates for ingress and egress of freight cars, both of which were guarded by Marine Corps personnel. The admitted placement of the flatcars in question on Marine Corps trackage inside the reservation creates a rebuttable presumption that it was done with the knowledge and consent, if not at the specific request, of defendant's personnel. The fact that the tracks upon which the cars were placed were particularly accessible to defendant's anticipated loading of howitzers, coupled with the natural assumption from the facts already given that plaintiff was to perform the transportation services, creates a strong inference that the cars were brought into the reservation at defendant's instance as a routine step in the processing of a normal shipment. It is rather clear that the placement of cars within the reservation was not to suit the convenience of plaintiff by providing it with free storage facilities for its rolling equipment, for plaintiff had the use of its own storage track outside the reservation with ample room to accommodate the cars in question until the moment arrived for their loading. Had the cars been left on plaintiff's storage track no liability for demurrage would have accrued to defendant and, when defendant's agents permitted the cars to enter the reservation for placement, they impliedly acquiesced in any resulting liability, whether or not it was actively considered by them at the time. This was an act of appropriation

by defendant which, under the terms of the quoted tariff, entitled the carrier to compensation for demurrage even in the absence of an order or of ultimate use.

Such a holding is in harmony with the following reports of the Interstate Commerce Commission in comparable cases which have been cited by the parties: American Smelting and Refining Company v. Lehigh Valley Railroad Company, 56 I.C.C. 195; Gammill Lumber Co. v. Alabama & Vicksburg Ry. Co., et al., 87 I.C.C. 41; Eppinger & Russell Co. v. Atlantic Coast Line R. R. Co., 272 I.C.C. 510; Spencer Chemical Co. v. Missouri-Kansas-Texas R. R. Co., 284 I.C.C. 41.

The parties have stipulated that, if plaintiff prevails, it will be entitled to judgment in the amount of $4,010.

## DIRECTOR PRODUCTS CORPORATION
### v.
### UNITED STATES.
### No. 336–54.

United States Court of Claims.

March 5, 1958.

Samuel Brodsky, New York City, for plaintiff. Alfred Miller, New York City, was on the brief.

Richard M. Roberts, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Rufus E. Stetson, Jr., and Robert Livingston, Washington, D. C., were on the brief.

WHITAKER, Judge.

This case is before us on defendant's motion for summary judgment.

Plaintiff sues to recover excise taxes levied on Norwood Director exposure